**United States District Court**
**District of Massachusetts**

```
_____   )
                                   )
COMMISSIONERS OF BRISTOL COUNTY    )
        Plaintiff,                 )
                                   )
        v.                         )     Civil Case Nos.
                                   )     12-11525-NMG
FEDERAL NATIONAL MORTGAGE          )
ASSOCIATION, FEDERAL HOME LOAN     )
MORTGAGE CORPORATION, FEDERAL      )
HOUSING FINANCE AGENCY             )
            Defendants.            )
_____   )
```

**MEMORANDUM & ORDER**

GORTON, J.

Plaintiff Commissioners of Bristol County, Massachusetts ("plaintiff") brings this action against the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac"), together referred to as "the Enterprises", and the Federal Housing and Finance Agency ("the Agency"). Plaintiff seeks to collect real estate transfer taxes that it claims are owed for real estate property transfers made by defendants.

I.   **Background**

The Massachusetts Excise on Deeds, Instruments and Writings, M.G.L. c. 64D, § 1, imposes a tax whenever a deed or other instrument of conveyance is recorded during the transfer of real property ("the Transfer Tax"). The Transfer Tax is imposed upon

-1-

sellers of real property, unless the purchase and sale agreement specifies that the buyer will pay the tax. See M.G.L. c. 64D, § 2.  The amount of the tax depends upon both the sale price and the county in which the property is located.  Plaintiff is a county in Massachusetts and is required to collect the Transfer Tax at the County Registry of Deeds.

Defendant Fannie Mae is a corporation chartered by Congress to establish secondary market facilities for residential mortgages. 12 U.S.C. § 1716.  Defendant Freddie Mac is a corporation chartered by Congress for substantially the same purpose as Fannie Mae. Id. § 1451.  Defendant Federal Housing Finance Agency is an independent federal agency created under the Housing and Economic Recovery Act of 2008.  In September, 2008 the Director of the Agency placed Fannie Mae and Freddie Mac into conservatorships "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs." Id. § 4617(a)(2). As Conservator, the Agency succeeds to all of the "rights, titles, powers, and privileges" of Fannie Mae and Freddie Mac, and also has the power to "operate" them, "conduct all [of their] business," and "preserve and conserve" their "assets and property." Id. § 4617(b)(2).

When Congress created the defendants, it expressly exempted them from "all" state and local taxes with the exception of taxes on real property.  The charters of each of the Enterprises

-2-

provide that:

> The corporation . . . shall be exempt from all taxation
> now or hereafter imposed by any State, . . . county,
> municipality, or local taxing authority, except that any
> real property of the corporation shall be subject to
> State, . . . county, municipal, or local taxation to the
> same extent as other real property is taxed.

12 U.S.C. §§ 1723a(c)(2), 1452(e).  Congress granted the Agency a

similar exemption:

> The Agency [as Conservator] . . . shall be exempt from
> all taxation imposed by any State, county,
> municipality, or local taxing authority, except that
> any property of the Agency [as Conservator] shall be
> subject to State, territorial, county, municipal, or
> local taxation to the same extent according to its
> value as other real property is taxed.

12 U.S.C. § 4617(j)(2).

As a result of widespread foreclosures, the Enterprises have

become the owners of a multitude of properties throughout the

United States, including many in Bristol County.  Plaintiff

alleges that the Enterprises have subsequently sold a significant

number of those foreclosed properties in Bristol County but have

not paid the Transfer Taxes on those transfers as required by

M.G.L. c. 64D, § 1.

Plaintiff contends that the Enterprises, and the Agency as

conservator, are not exempt from paying the Transfer Tax, and

brings a four-count Complaint for: 1) Non-Payment of Deed Excise

Taxes (Count 1), 2) Unjust Enrichment (Count 2), 3) Quantum

Meruit (Count 3) and 4) Declaratory Judgment as to whether

defendants are exempt from payment of deed excise taxes.

## II.  **Procedural History**

Plaintiff filed its Complaint in August, 2012.  In November, 2012, defendants moved to dismiss.  A month later, plaintiff filed a motion to amend its complaint to add an additional count. In April, 2013, before the Court decided either of the pending motions, plaintiff filed a motion for summary judgment as to liability.  All three motions are currently before the Court.

## III. **Motion to Dismiss**

Defendants move to dismiss all of plaintiff's claims on the ground that they are statutorily exempt from the deed excise tax.

### A.  **Standard**

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  A court may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Id.  Rather, the relevant inquiry focuses on the reasonableness of the inference of

-4-

liability that the plaintiff is asking the court to draw. <u>Id.</u> at
13.  When rendering that determination, a court may not look
beyond the facts alleged in the complaint, documents incorporated
by reference therein and facts susceptible to judicial notice.
<u>Haley</u> v. <u>City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011).

 **B.  Application**

All four counts of plaintiff's Complaint arise out of
defendants' alleged failure to pay the Transfer Tax.  Defendants
move to dismiss on the ground that under their charters they are
exempt from all taxation imposed by any "State, county,
municipality, or local taxing authority," 12 U.S.C. §§ 1452(e),
1723a(c)(2), 4617(j)(2), and therefore are exempt from the
Transfer Tax.  In response, plaintiff proffers two theories to
assert that defendants are obligated to pay the Transfer Tax:
1) that the statutory provision exempting defendants from "all
taxation" in their charters does not provide immunity from the
Transfer Tax and 2) even if "all taxation" does include the
Transfer Tax, the Transfer Tax falls under the real property
exception to that exemption.

 **1.  "All Taxation"**

Relying on <u>Federal Land Bank of St. Paul</u> v. <u>Bismarck Lumber
Co.,</u> 314 U.S. 95 (1941), defendants argue that under the plain
language of their charters they are statutorily exempt from
paying the Transfer Tax.  Plaintiff responds that in <u>United</u>

<u>States</u> v. <u>Wells Fargo Bank</u>, 485 U.S. 351 (1988), the Supreme
Court made clear that the phrase "all taxation" included in the
charters does not include taxes such as the Transfer Tax and
instead only applies to direct taxes.  This Court, however,
agrees with defendants that <u>Wells Fargo</u>, which established the
meaning of "all taxation" for statutes that exempt a particular
kind of <u>property</u> from taxation, is not controlling in cases such
as this one where the Court is called upon to interpret statutes
that exempt a specific <u>entity</u> from taxation.

Rather, the Court concludes that this case is controlled by
the Supreme Court's decision in <u>Bismarck</u>.  In <u>Bismarck</u>, a bank
created pursuant to the Federal Farm Loan Act of 1916 ("Farm Loan
Act") acquired property to which it then made repairs and
improvements.  The bank relied upon the Farm Loan Act in refusing
to pay sales taxes on the materials used in those renovations.
That Act provided in relevant part, that

> every Federal land bank and every national farm loan
> association, including the capital and reserve or
> surplus therein and the income derived therefrom, shall
> be exempt from Federal, State, municipal, and local
> taxation, except taxes upon real estate held,
> purchased, or taken by said bank or association.

<u>Bismarck</u>, 314 U.S. at 97 n.1 (internal quotation omitted).
Determining that the statute exempted the bank from paying the
sales tax, the Supreme Court rejected the lumber company's
argument that Congress could not exempt a bank performing non-
governmental functions from taxation because "Congress has the

-6-

power to protect the instrumentalities which it has
constitutionally created." Id. at 102-03 (citing Pittman v. Home
Owners' Loan Corp., 308 U.S. 21 (1938)).

The plaintiff in this case asks this Court to ignore Bismark
and adopt the reasoning of Oakland County v. Federal Housing
Finance Agency, 871 F. Supp. 2d 662 (E.D. Mich. 2012), a recent
case in which a district court found Well Fargo dispositive and
concluded that "all taxation" did not include transfer taxes and
thus a county was obligated to pay such taxes.  Since plaintiff
filed this case, however, the Sixth Circuit Court of Appeals
vacated the Oakland County decision and remanded with
instructions to enter summary judgment for defendants. Cnty. of
Oakland v. Fed. Hous. Fin. Agency, 716 F.3d 935 (6th Cir. 2013).
The Sixth Circuit held that defendants' statutory charters
plainly state that they are exempt from "all taxation," which
includes excise taxes, and thus the county's argument was without
merit. Id.

Over the past two years, numerous lawsuits against the same
three defendants in this case based on claims nearly identical to
those made by the plaintiff here have been decided in favor of
defendants by federal courts across the country.[1] See City of
Providence v. Fed. Nat'l Mortg. Ass'n, Nos. 12-481L, 12-668L,

---

[1] In addition to the case before this Session, there is
another case pending in this district brought by Norfolk County,
Massachusetts. See Norfolk Cty. v. Fed. Hous. Fin. Agency, No.
12-CV-11505-MLW (D. Mass. filed Aug. 14, 2012).

2013 WL 3816429 (D.R.I. July 24, 2013); Milwaukee Cnty. v. Fed. Nat'l Mortg. Ass'n, No. 12-C-0732, 2013 WL 3490899 (E.D. Wis. July 10, 2013); McNulty v. Fed. Hous. Fin. Agency, No. 3:12-1822, 2013 WL 3147641 (M.D. Pa. June 19, 2013); Doggett v. Fed. Hous. Fin. Agency, No. 2:12-cv-553-FtM-29DNF, 2013 WL 2920388 (M.D. Fla. June 13, 2013); Butts v. Fed. Nat'l Mortg. Ass'n, No. 9:12-1912 (D.S.C. May 23, 2013); Athens-Clarke Cnty. Unified Gov't v. Fed. Hous. Fin. Agency, No. 5:12-cv-355(MTT), 2013 WL 2102922 (M.D. Ga. May 14, 2013); Montgomery Cnty. Comm'n v. Fed. Hous. Fin. Agency, No. 2:12cv885-MHT, 2013 WL 1896256 (M.D. Ala. May 6, 2013); Cape May Cty., NJ v. Fed. Nat'l Mortg. Ass'n, No. 12-04712 (RBK/KMW) (D.N.J. dismissed Apr. 29, 2013); Montgomery Cnty., Md. v. Fed. Nat'l Mortg. Ass'n, No. DKC 13-066, 2013 WL 1832370 (D. Md. Apr. 30, 2013); Vadnais v. Fed. Nat'l Mortg. Ass'n, No. 12-1598 (DSD/TNL), 2013 WL 1249224 (D. Minn. Mar. 27, 2013); Hennepin Cnty. v. Fed. Nat'l Mortg. Ass'n, No. 12-2075 (DSD/TNL), 2013 WL 1235589 (D. Minn. Mar. 27, 2013); Delaware Cnty., Pa. v. Fed. Hous. Fin. Agency, No. 12-4554, 2013 WL 1234221 (E.D. Pa. Mar. 26, 2013); DeKalb Cnty. v. Fed. Hous. Fin. Agency, No. 12C50227 (N.D. Ill. dismissed Feb. 14, 2013); Nicolai v. Fed. Hous. Fin. Agency, No. 8:12-cv-1335-T-33EAJ, 2013 WL 899967 (M.D. Fla. Feb. 12, 2013); Hertel v. Bank of Am., 897 F. Supp. 2d 579 (W.D. Mich. 2012); Hager v. Fed. Nat'l Mortg. Ass'n, 882 F. Supp. 2d 107 (D.D.C. 2012); see also, Fannie Mae v. Hamer, No. 12 C

50230, 2013 WL 591979 (N.D. Ill. Feb. 13, 2013) (the Enterprises and the Agency acting as plaintiffs sought declaratory judgment regarding their statutory exemption from paying transfer taxes). In addition to the Sixth Circuit's decision in County of Oakland, every single court that has addressed the issue of whether defendants are exempt from "all taxation" has found that "all" means "all," and therefore that defendants are exempt from paying transfer taxes.

This Court is bound by the holding in Bismarck and agrees with the reasoning of the Sixth Circuit in County of Oakland and with the many district courts that have addressed defendants' exemption from "all taxation."  Therefore, the Court finds that the plain language of 12 U.S.C. §§ 1723a(c)(2), 1452(e) and 4617(j)(2) exempts defendants from paying transfer taxes that would otherwise be due under M.G.L. c. 64D.

## 2.   The Real Property Carve-Out

Plaintiff argues in the alternative that even if the Court finds that the transfer tax is included in "all taxation," defendants are still liable to pay that tax.  Plaintiff bases that argument on the plain language of the real property or "carve out" exception within the charter exemptions.  As indicated above, the exemptions at issue contain an exception to the extent that

> any real property of the [defendants] shall be subject
> to State, territorial, county, municipal, or local

taxation to the same extent as other real property is taxed.

E.g., 12 U.S.C. §§ 1723a(c)(2); 1452(e); 4617(j)(2).

Thus, the relevant question is whether real property "is taxed" by the Transfer Tax.  As plaintiff admits, however, the Transfer Tax is a tax upon the privilege to transfer real property, not on the property itself.  In Wells Fargo the Supreme Court drew a clear distinction between a tax on property and an excise tax such as the Transfer Tax in this case.  The Court explained that "an excise tax, which is levied upon the use or transfer of property," is distinct from "a tax levied upon the property itself." 485 U.S. at 355.  The Court in Bismarck also distinguished between a tax on the transfer of property and a tax on the property itself and concluded that "[i]t cannot be seriously contended that the tax falls within the real estate exception." Bismarck, 314 U .S. at 101.

It is therefore clear that the exception to the exemption contained within the charters of defendants applies to taxes imposed directly on real property and not on its transfer. Plaintiff's argument that the transfer tax falls within the carve-out exception is unavailing.

Based on the foregoing, the Court concludes that defendants are exempt from the Transfer Tax.  Because plaintiffs have failed to state claims upon which relief can be granted the motion to dismiss will be allowed.

-10-

IV. **Motion to Amend**

Plaintiff has moved to amend its Complaint to add a fifth count.

**A.    Standard**

Pursuant to Fed. R. Civ. P. 15(a), a party may amend its complaint once within 21 days as a matter of right and further "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The court "should freely give leave when justice so requires." Id. Although Rule 15 has been construed liberally, amendment is not warranted if it would be futile or reward undue or intended delay. See Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994).

**B.    Application**

Plaintiff moved to amend its Complaint more than a month after defendants filed their motion to dismiss. Plaintiff seeks leave to add a fifth count of quo warranto based on the theory that defendants acted ultra vires with respect to their federal statutory charters when they claimed they were exempt from the transfer tax. The proposed amended complaint requests that this Court enjoin defendants from claiming that exemption.

Unfortunately for plaintiff, the proposed quo warranto count is foreclosed by the Court's contemporaneous finding with respect to the motion to dismiss. Because defendants are exempt from "all taxation", including the transfer tax, defendants did not

-11-

act beyond the scope of their authority in claiming such an exemption.  Consequently, plaintiff's proposed amendment would be futile and will be denied.

## V.   **Motion for Summary Judgment**

### A.   **Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted." Id.  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v.

-12-

<u>Catrett</u>, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. <u>O'Connor</u> v. <u>Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B.  Application**

Plaintiff moves for summary judgment on three grounds: 1) the statutory phrase "exempt from all taxation" does not insulate defendants from the transfer tax, 2) the real property "carve-out" encompasses the transfer tax and therefore precludes exemption and 3) defendants cannot claim a statutory exemption due to their lack of constitutional immunity.  Because the first two grounds were resolved by the Court in defendants' favor with respect to the motion to dismiss, the Court need not address them again here.

With respect to the third ground, plaintiff apparently challenges the constitutionality of the Congressional grant of statutory exemptions to defendants.[2]  Plaintiff argues that private entities are immune from state and local transfer taxes only if 1) they have inherent constitutional immunity or are

---

[2] The Court notes that plaintiffs did not raise this constitutional claim in their Complaint.

-13-

federal instrumentalities, or 2) they are immunized by the enactment of a constitutional statute.  Plaintiffs assert that defendants meet neither prong.

Plaintiff is mistaken with regard to the first prong.  It is unnecessary for this Court to determine whether a congressionally created entity is a federal instrumentality qualified for implied constitutional immunity from taxation if that entity is already exempt pursuant to a validly enacted statute.  See First Ag. Nat'l Bank of Berkshire Cnty. v. State Tax Comm'n, 392 U.S. 339, 341 (1968) ("because of pertinent congressional legislation [regarding state taxation of national banks], we find it unnecessary to reach the constitutional question of whether today national banks should be considered nontaxable as federal instrumentalities"). Accord Montgomery Cty., Md., 2013 WL 1832370, at *11 n.12; Hamer, 2013 WL 591979, at *6.  Rather, private entities may be shielded from paying state taxes by "constitutional immunity or congressional exemption." Ariz. Dept. of Revenue v. Blaze Const. Co., Inc., 526 U.S. 32, 36-37 (1999) (recognizing that Congress may expressly exempt private companies from paying state taxes) (emphasis added). See also United States v. N.M., 455 U.S. 720, 737-38 (1982); United States v. City of Detroit, 355 U.S. 466, 474 (1958).  Here the entities were clearly exempted by Congress.  Furthermore, courts recently called upon to address the same issue with respect to these

-14-

defendants have reached the same conclusion. See City of Providence, 2013 WL 3816429, at *3; McNulty, 2013 WL 3147641, at *6; Montgomery Cnty., Md., 2013 WL 1832370, at *11 (because exemptions are valid exercises of congressional power, the court need not address whether [defendants] qualify as federal instrumentalities); Butts, No. 9:12-1912, slip. op. at 15 (same); Athens-Clarke, 2013 WL 2102922, at *8 (same).

As to plaintiff's second argument, namely that Congress lacked the constitutional authority to exempt defendants from taxation, several federal courts have recently rejected virtually identical arguments. See City of Providence, 2013 WL 3816429, at *3; Montgomery Cnty., Md., 2013 WL 1832370, at *11-*14; Butts, No. 9:12-1912, slip. op. at 13-15.  In those cases courts have determined that the enactment by Congress of the statutes that exempt defendants from "all taxation," was valid under the Commerce Clause. See, e.g., City of Providence, 2013 WL 3816429, at *3 (valid under the Commerce Clause because Congress was acting within that authority to create defendants and therefore was acting within that authority to shield defendants from taxation); see also Montgomery Cnty., Md., 2013 WL 1832370, at *14 (valid under the Commerce Clause because the payment of transfer taxes by defendants has a substantial economic effect on interstate commerce).  Courts has also reasoned that the statutory exemption of defendants from paying transfer taxes is a

-15-

"rational means" of addressing the possibility that obligating defendants' to pay transfer taxes could interfere with their missions of providing stability and liquidity to the market. Id.; see also, Butts, No. 9:12-1912, slip. op. at 15.  This Court agrees with that reasoning and concludes that Congress has the power to exempt defendants from state and local taxation. Plaintiff's motion for summary judgment will therefore be denied.

**ORDER**

In accordance with the foregoing,

1)   Plaintiff's motion for summary judgment (Docket No. 48) is **DENIED.**

2) Plaintiff's motion to amend (Docket No. 28) is **DENIED,** and

3) Defendants' motion to dismiss (Docket No. 18) is **ALLOWED** and the case is **DISMISSED.**


**So ordered.**

_/s/ Nathaniel M. Gorton_
Nathaniel M. Gorton
United States District Judge

Dated August 9, 2013